IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | |
|---|---|
| IN RE: ) | Chapter 7 case |
| ) | Number <u>09-21056</u> |
| DAVID ROBERT DESALVO ) | |
| ELIZABETH JO DESALVO ) | |
| ) | |
| Debtors ) | |
| ) | |
| ARIZONA FEDERAL CREDIT UNION ) | |
| ) | |
| Creditor/Movant ) | |
| ) | |
| v. ) | |
| ) | |
| DAVID ROBERT DESALVO ) | |
| ELIZABETH JO DESALVO ) | |
| ) | |
| Debtors ) | |
| ) | |
| and ) | |
| ) | |
| R. MICHAEL SOUTHER ) | |
| ) | |
| Chapter 7 Trustee ) | |
| ) | |
| Respondents ) | |

**<u>ORDER</u>**

This matter comes before me on the Motion for Relief from Automatic Stay ("Motion for Relief") filed by Creditor Arizona Federal Credit Union ("AFCU"). AFCU seeks relief from stay as to a 2002 Honda Civic EX ("Vehicle") currently in the Debtors' possession. The only issue considered here is whether the

automatic stay has terminated by operation of law. Since I cannot determine, based on the record before me, if AFCU has a purchase money security interest ("PMSI") in the Vehicle, I am unable to determine whether the automatic stay remains in effect. If AFCU has a PMSI, then the 45-day period to "act" on redemption under 11 U.S.C. § 521(a)(6) applies and the automatic stay remains in effect since the Debtors' Motion for Order Authorizing Redemption of Personal Property ("Motion to Redeem") was a sufficient "act" under that section. If AFCU does not have a PMSI, then the 30-day period to perform on reaffirmation under 11 U.S.C. § 521(a)(2) applies and the automatic stay has terminated by operation of law since the Debtors took no action within that period. Therefore, since I need more evidence to determine whether AFCU has a PMSI, and because that determination is dispositive of whether the automatic stay remains in effect, hearing on AFCU's Motion for Relief is continued.

## BACKGROUND

On August 13, 2009, pro se Debtors David Robert DeSalvo and Elizabeth Jo DeSalvo filed a voluntary joint petition under chapter 7 of the Bankruptcy Code. (See Dkt. No. 1.) The Vehicle was listed in the Debtors' schedules, and they claimed an exemption against both the Vehicle and a 2002 Ford Explorer in the amount of $3,500 pursuant to Official Code of Georgia § 44-

13-100. (Id. at 13-14.) AFCU was listed as a secured creditor in the amount of $9,128, with the value of the Vehicle listed as $6,340. (Id. at 15.) Included along with the petition was a Statement of Intention, in which the Debtors stated that the Vehicle was to be retained and that they intended to reaffirm the Vehicle's debt. (Dkt. No. 1 at 54.)

On September 21, 2009, AFCU filed the Motion for Relief (see Dkt. No. 25). In that motion, AFCU claimed that it was entitled to relief for cause, a lack of adequate protection. (Id.) AFCU alleged that the Debtors had no equity in the Vehicle pledged to AFCU as collateral and that the Debtors had failed to maintain insurance on AFCU's interest in the Vehicle. (Id.) Attached to the Motion for Relief was a document titled "Closed-End Note and Disclosure Statement" ("Loan Agreement"). (See id. at 4.) The Loan Agreement indicated that the amount financed was $8,498.21. (Id.) In the "Security" section in which collateral for the loan was to be listed, the box labeled "Other" was checked, and the Vehicle was listed next to that box. The box labeled "The good [sic] or property being purchased" was not checked. (Id.) Also attached to the Motion for Relief was an Arizona Certificate of Title that was issued on November 24, 2006. (See id. at 3.) That document showed a first lien in favor of AFCU, and indicated that the Vehicle was first registered in October 2002. (Id.) Hearing on the Motion for Relief was set for November 5, 2009.

3

On October 22, 2009, the Debtors filed the Motion to Redeem in which they proposed to pay AFCU $3,125 in full satisfaction of the lien upon the Vehicle. (See Dkt. No. 31.) AFCU responded by requesting a hearing on the Motion to Redeem (see Dkt. No. 38), and a hearing is set for December 3, 2009.

On November 5, 2009, a hearing was held on AFCU's Motion for Relief. At that hearing, AFCU did not address its claim that the automatic stay should be terminated for cause. Rather, AFCU contended that the automatic stay had already expired under either § 521(a)(2) or § 521(a)(6) since it had been more than 45 days since the § 341(a) meeting of creditors and the Debtors had neither acted on their intention to reaffirm the Vehicle's debt nor amended their Statement of Intention within the longer period, 45 days. Debtor Elizabeth DeSalvo, appearing pro se, stated that AFCU waited 35 days after the § 341(a) meeting to provide the Debtors with the proposed reaffirmation agreement. She claims that the total amount owed under the proposed agreement was approximately $4,000 more than what the Debtors actually owed on the Vehicle. Mrs. DeSalvo stated that, because of that provision, the Debtors no longer intended to reaffirm and the Motion to Redeem was filed. At the close of hearing, I took this matter under advisement to determine whether the automatic stay had terminated by operation of law.

4

**DISCUSSION**

The resolution of this issue requires two levels of analysis. First, because the Debtors filed their Motion to Redeem 38 days after the § 341(a) meeting of creditors, I must determine whether they are subject to the 30-day period in which to perform under 11 U.S.C. § 521(a)(2) or the 45-day period to act under 11 U.S.C. § 521(a)(6). Second, if the 45-day period of § 521(a)(6) applies, I must determine whether the filing of the Motion to Redeem constitutes an "act" within the meaning of that section.

### I. Relation Between Section 521(a)(2) and Section 521(a)(6)

As an initial matter, I must determine the interplay between these two seemingly contradictory provisions of the Bankruptcy Code.[1] Section 521(a)(2)(A) requires that for every debt secured by property of the estate, a debtor must file a statement of intention with respect to the retention or surrender of the subject property. 11 U.S.C. § 521(a)(2).[2] In that statement the

---

[1] This inconsistency is noted in Collier on Bankruptcy. The authors raise the question — without answering — whether the § 521(a)(6) time period overrides the § 521(a)(2) time period. 4 Collier on Bankruptcy ¶ 521.10[4] (15th ed. rev. 2006). Some courts suggest that that § 521(a)(6) would control, while others suggest that § 521(a)(2) would control. Compare In re Donald, 343 B.R. 524, 535 n.5 (Bankr. E.D.N.C. 2006) (stating that if § 521(a)(6) applies, it should control), with In re Norton, 347 B.R. 291, 300 n.10 (Bankr. E.D. Tenn. 2006) (stating that § 521(a)(2) "invariably" trumps § 521(a)(6)).

[2] 11 U.S.C. § 521(a)(2) states in pertinent part:
   (a) The debtor shall—
     . . .

5

debtor must also, if the property is to be retained, specify whether the property is to be redeemed or whether the debtor plans to reaffirm the debt. Id. Section 521(a)(2)(B) requires that the debtor "perform his intention" under the § 521(a)(2)(A) statement of intention within 30 days after the first date set for the § 341(a) meeting. Id. Section 521(a)(2)(C) provides the consequence for failure to comply with the requirements of subsections (A) and (B), which is the application of 11 U.S.C. § 362(h). See id. Section 362(h) provides that, where the debtor has not complied with the applicable § 521(a)(2) deadlines, the automatic stay terminates as to the subject property and the property is no longer property of the estate. 11 U.S.C. § 362(h).[3]

---

(2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—
    (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
    (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
    (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h) . . . .

[3] 11 U.S.C. § 362(h) states in pertinent part:

6

AO 72A
(Rev. 8/82)

Section 521(a)(2) is not, however, the only Bankruptcy Code section that provides debtors with a deadline for carrying out reaffirmation or redemption. Section 521(a)(6), which was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), provides that a debtor must either enter into a reaffirmation agreement or redeem property not later than 45 days after the first meeting of creditors. 11 U.S.C. § 521(a)(6).[4] If

---

(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)—
    (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and
    (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

[4] 11 U.S.C. § 521(a)(6) states in pertinent part:
  (a) The debtor shall—
    . . .
    (6) in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either—
        (A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or
        (B) redeems such property from the security interest pursuant to section 722.
    If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the

AO 72A
(Rev. 8/82)

the debtor "fails to so act within the 45-day period," the automatic stay is terminated as to the property and the property ceases to be property of the estate. Id.

Section 521(a)(2) cannot be interpreted so as to obviate all application of § 521(a)(6). It is true that the language describing the type of debts to which § 521(a)(2) applies is broad. That section applies to all "debts which are secured by property of the estate." 11 U.S.C. § 521(a)(2). Taken alone, it would appear that § 521(a)(2), and specifically the 30-day period for reaffirmation or redemption under § 521(a)(2)(B), would be applicable to all secured debts that the debtor wishes to reaffirm or which attach to property the debtor wishes to redeem. This interpretation, however, would render § 521(a)(6) a nullity, since the purpose of that section is to afford the debtor 45 days to act on reaffirmation or redemption. If the automatic stay terminates after 30 days under § 521(a)(2) for the debtor's failure to reaffirm or redeem, then it would be irrelevant whether the debtor acted to reaffirm or redeem within 45 days under § 521(a)(6). If § 521(a)(2) supersedes § 521(a)(6), then the latter section could never apply. Given that § 521(a)(6) was added in the BAPCPA amendments, I cannot conclude that Congress intended for it to be without effect. Section 521(a)(6) provides

---

estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law . . . .

8

the controlling time period in the limited circumstances in which it applies.

    A.    <u>Section 521(a)(6) Applies Regardless of Whether a Creditor Has Filed a Proof of Claim</u>

By its terms, § 521(a)(6) applies in individual debtor chapter 7 cases where a creditor has an allowed secured claim for the purchase price of the subject property. 11 U.S.C. § 521(a)(6). There is disagreement as to the effect the word "allowed" in the term "allowed claim" should be given. Some courts have held that a claim need not have been filed in the case for § 521(a)(6) to apply, <u>see</u> <u>In re Steinhaus</u>, 349 B.R. 694, 705-06 (Bankr. D. Idaho 2006); <u>In re Rowe</u>, 342 B.R. 341, 347-49 (Bankr. D. Kan. 2006), while others have held that a claim can only be allowed if filed, and therefore if not filed § 521(a)(6) does not apply, <u>see</u> <u>Coastal Fed. Credit Union v. Hardiman</u>, 398 B.R. 161, 178-80 (E.D.N.C. 2008); <u>In re Hinson</u>, 352 B.R. 48, 51-52 (Bankr. E.D.N.C. 2006); <u>In re Anderson</u>, 348 B.R. 652, 657 (Bankr. D. Del. 2006); <u>In re Donald</u>, 343 B.R. 524, 535-36 (Bankr. E.D.N.C. 2006). I am persuaded by the reasoning that § 521(a)(6) does not require a creditor to file a claim.

There is no indication that the drafters intended to limit the scope of § 521(a)(6) to only asset chapter 7 cases where creditors file claims. See <u>In re Steinhaus</u>, 349 B.R. at 705 ("It

9

would be odd that creditors in both asset and no asset chapter 7 cases could fall within and obtain relief under § 521(a)(2) and § 362(h), but only those in asset cases who actually file and have allowed claims would fall within § 521(a)(6).") The legislative history does not indicate an intent to limit the reach of § 521(a)(6) to asset chapter 7 cases, nor does it mention the term "allowed claim." See H.R. Rep. No. 109-31 (Pt. I), at 70-71 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 139.[5] This is one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters," and thus effect must be given to the drafters' intent. In re Rowe, 342 B.R. at 349 (citing United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989)). Therefore, I conclude that a creditor's failure to file a proof of claim does not preclude the application of § 521(a)(6).

---

[5] The legislative history states in pertinent part:
   Sec. 304. Debtor Retention of Personal Property Security. Section 304(1) of the Act amends section 521(a) of the Bankruptcy Code to provide that an individual who is a chapter 7 debtor may not retain possession of personal property securing, in whole or in part, a purchase money security interest unless the debtor, within 45 days after the first meeting of creditors, enters into a reaffirmation agreement with the creditor, or redeems the property. If the debtor fails to so act within the prescribed period, the property is not subject to the automatic stay and is no longer property of the estate.

10

### B. Section 521(a)(6) Applies to All Purchase Money Security Interests

The words "purchase price" in § 521(a)(6) must be construed to mean "purchase money security interest." Although some courts have held that a claim for the "purchase price" means only a claim for the full amount of the actual purchase price, see In re Donald, 343 B.R. at 536-37, I agree with those courts that hold that § 521(a)(6) applies to all purchase money security interests regardless of whether the debtor has subsequently paid some portion of the original debt. See, e.g., Dumont v. Ford Motor Credit Co. (In re Dumont), 383 B.R. 481, 487-88 (B.A.P. 9th Cir. 2008); In re Steinhaus, 349 B.R. at 706-07. As the legislative history indicates, § 521(a)(6) applies to "personal property securing, in whole or in part, a purchase money security interest." H.R. Rep. No. 109-31 (Pt. I), at 70-71. In addition, interpreting "purchase price" as the full amount of the actual purchase price would likely cause § 521(a)(6) to be "meaningless and have virtually no application" since any down payment or subsequent repayment would reduce the creditor's claim to less than the purchase price. In re Dumont, 383 B.R. at 488. Therefore, because the legislative history suggests a broader reading of the term "purchase price," I conclude that § 521(a)(6) applies to all purchase money security interests.

11

### C. It is Unclear Whether Section 521(a)(6) Applies in the Present Case

AFCU has a perfected security interest in the Vehicle. (See Dkt. No. 25.) It is unclear, however, whether that security interest is a PMSI. The Debtors may have purchased the Vehicle at that time or they may have entered into a refinance agreement with AFCU. In the former case, AFCU would have a PMSI and the 45-day period of § 521(a)(6) would apply. In the latter case, AFCU would not have a PMSI and the 30-day period of § 521(a)(2) would apply. Since the issue before me — whether the stay remains in effect — is time sensitive, both possible outcomes will be discussed.

### II. Application of Section 521(a)(2)

If § 521(a)(2) applies, then the automatic stay has terminated by operation of law. Under that section, the Debtors had 30 days following the § 341(a) meeting in which to perform their stated intention to reaffirm the Vehicle's debt. See 11 U.S.C. § 521(a)(2)(B). Their only action, however, was to file the Motion to Redeem 38 days after the § 341(a) meeting. The fact that AFCU did not provide the Debtors with the proposed reaffirmation agreement within the 30-day period is of no consequence since the Debtors could have filed a motion to extend time prior to the deadline. See 11 U.S.C. § 521(a)(2)(B)

12

(allowing the court to extend the 30-day deadline for cause). Therefore, if § 521(a)(2) applies, the automatic stay has terminated by operation of law since the Debtors took no action within the 30-day period.

### III. Application of Section 521(a)(6)

For the purposes of § 521(a)(6), the filing of a motion to redeem constitutes an "act" under that section. As discussed above, § 521(a)(6) requires that a debtor enter into a reaffirmation agreement or redeem property not later than 45 days after the first meeting of creditors. 11 U.S.C. § 521(a)(6). If the debtor "fails to so act" within that time, the automatic stay is terminated as to the property and the property ceases to be property of the estate. Id. The legislative history of § 521(a)(6) does not address what constitutes an "act." See supra note 5. Likewise, 11 U.S.C. § 722, which provides the basis for redemption, does not address whether the filing of a motion to redeem satisfies the act requirement of § 521(a)(6). See 11 U.S.C. § 722.[6]

---

[6] 11 U.S.C. § 722 states as follows:
    An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption.

13

There is, however, a compelling reason to hold that a motion to redeem satisfies the "act" requirement. In the case where there is a dispute over the redemption amount, a hearing must be set to determine the redemption value. Even if a debtor timely files a motion to redeem, there is no guarantee that the court will schedule a hearing within the 45-day period. Thus, debtors could be prevented from completing redemption within that time period through no fault of their own. See In re Militante, No. 08-45077 TK, 2009 WL 779798, at *2 (Bankr. N.D. Cal. 2009) ("But for the request for hearing, disputing the proposed redemption value for the [c]ar, the redemption would presumably have been accomplished within the 45 days."); In re Parker, 363 B.R. 621, 625 (Bankr. M.D. Fla. 2007) (suggesting the "bright line test" for determining compliance with § 521(a)(6) include the filing of a motion to redeem). The filing of a motion to redeem within the 45-day period set forth in § 521(a)(6) constitutes an "act" necessitating the continuance of the automatic stay.

In the present case, the Debtors filed the Motion to Redeem 38 days after the § 341(a) meeting, within the 45-day period under § 521(a)(6). That filing constituted an "act" to redeem within the meaning of § 521(a)(6). Therefore, if § 521(a)(6) applies, then the automatic stay remains in effect.

14

**CONCLUSION**

Since I cannot determine whether the automatic stay has terminated by operation of law under either § 521(a)(2) or remains in effect under § 521(a)(6), hearing on AFCU's Motion for Relief is **ORDERED CONTINUED** to hearing on the Debtors' Motion to Redeem.

_____
JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia
this 15th day of November, 2009.